[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff wife by complaint dated May 18, 1998 and made returnable to this court on June 9, 1998, seeking a dissolution of marriage on the grounds of an irretrievable breakdown. Additionally, the plaintiff seeks exclusive use and occupancy of the marital residence, custody and support for the minor children, alimony, counsel fees, an equitable division of the marital assets and such other relief as the court may deem appropriate.
On June 2, 1998, the plaintiff first appeared through counsel and filed an answer and cross complaint seeking a dissolution of the marriage, joint custody, an equitable division of the assets of the parties and such other relief as the court deems appropriate.
On October 12, and November 17, 2000, this matter was tried to the court having previously been claimed to the limited contested list. The parties were represented throughout the proceedings by counsel. Testimony was received from the plaintiff, the defendant and George Sinnamon, who testified as an expert witness for the plaintiff. From the testimony and evidence produced at the trial and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The parties were intermarried on October 21, 1967 at Lewiston, Maine. The plaintiff and defendant have five children, issue of the marriage, two of whom are still minors and no other minor children have been born to the wife since the date of the marriage. The two minor children and the third youngest child, age 19 still reside with the plaintiff. Neither party is receiving any state, federal nor local assistance. The plaintiff has resided in this state for more than one year immediately prior to the date of the complaint and cross complaint. The court finds that it has jurisdiction over the parties and the marriage.
Based upon a review of the exhibits as well as the testimony at trial, the court finds the following additional facts.
The plaintiff wife is 57 years old and is a high school graduate. She also has taken several college courses. Prior to 1986, the plaintiff was an office worker at the J. C. Penney Company, Inc. and the Rice Packaging Co. In 1986, the parties formed the Millstone Sales and Service, Corp., hereafter referred to as Millstone. The corporation is engaged in the business of selling and servicing high tech bar-code scanning equipment. When the corporation was formed, the plaintiff and defendant each owned 50% of its common stock. The defendant, seeking to take advantage of the perceived benefits of a woman owned business, transferred 1% of his stock in the corporation to his wife. Presently, the plaintiff owns 51% of the stock and the defendant owns 49% of the stock of Millstone. CT Page 15275
George Sinnamon, a Certified Public Accountant, the plaintiff's witness, gave expert testimony as to the financial history of Millstone as well as the proposed sale of the company to the R2 Corporation. According to his testimony, which the court finds credible, Millstone grossed $1,444,382.00 in the fiscal year ending, February 1998, $1,361,914.00 in the fiscal year ending February 1999 and $1,301,601.00 in the fiscal year ending February of 2000. In addition, the officer's pay taken out of Millstone during each of the three referenced years and paid to the parties is as follows:
 Fiscal year, February 1998: $145,925.00 (plaintiff receiving $107,876.00 and defendant receiving $38,049.00).
 Fiscal year, February 1999; $133,597.00 (plaintiff receiving $91,315.00 and defendant receiving $42,282.00).
 Fiscal year, February 2000: $149,340.00 (plaintiff receiving $70,840.00 and defendant receiving $78,500.00)
Accordingly, Millstone has provided the parties with officer's pay of $428,862.00 over the past three fiscal years which is approximately $2,749.00 per week.
The 1999 U.S. Corporation Income Tax Return for Millstone for the tax year beginning March 31, 1999 and ending February 28, 2000 was introduced as evidence as Plaintiff's Exhibit #5. In addition, a financial statement for Millstone dated August 2, 2000 showing the balance sheet as of February 29, 2000 and February 28, 1999 and related statement of income and retained earnings and cash flow prepared by Ramunni, Buska 
Sinnamon, Certified Public Accountants showed total stockholder's equity as of February 29, 2000 of $94,613.00. (Plaintiff's Exhibit #8).
The parties signed a Letter of Intent on December 23, 1998 with the R2 Corporation in which it was proposed that the R2 Corp. would purchase the assets of Millstone for $375,000.00 contingent upon the execution of a mutually agreeable asset purchase agreement. (Plaintiff's Exhibit #11). The proposal included the employment of the defendant by R2 at $75,000.00 per year plus bonuses and commissions. R2 provided the defendant with compensation projection/examples which showed the potential of the defendant to earn significantly more than the $75,000.00 per year base salary. (Plaintiff's Exhibit #16). The defendant denies that these projections are neither accurate nor reasonable. CT Page 15276
Mr. Sinnamon testified that if the sale was completed under the proposed terms, the parties would have netted approximately $160,000.00 after the payment of expenses, including taxes.
The sale to R2 did not take place after negotiations broke down. The plaintiff attributes the failure of the deal to be completed to the defendant's neglect and to his distraction with their marital problems. The defendant testified that the deal was not completed for a variety of reasons. The proposed agreement included a covenant for the defendant not to compete which the defendant believed was not adequately compensated. He testified that if he was no longer employed by R2, he would be unable to work in the field of his expertise. He also testified that the proposed $75,000.00 per year salary he was to receive from R2 was below the market value and totally unacceptable to him. As R2 was also based in Minnesota, he felt that there may be a request that he relocate to Minnesota and that he did not desire to relocate. The defendant also testified that his wife's actions were destructive to the operation of Millstone which decreased the value of Millstone. Accordingly, the defendant testified that although he made a good faith effort to sell the business, he was unable to reach an agreement under terms that he felt were acceptable.
The court concludes that the defendant chose not to accept the terms of the proposed offer to sell the assets of Millstone to the R2 Corporation as he believed they were inadequate and he was unable to reach agreement on a number of terms of the sale. The court does not conclude that the defendant purposely sabotaged the negotiations. The court does not attribute any of the actions of the plaintiff to have contributed in the failure of the sale to have been completed.
On March 6, 1999, after agreement of the parties, the court ordered the defendant to conduct the business of Millstone in a manner consistent with the prior operation of the business and with the utmost regard for his fiduciary obligations to the shareholders of the business. The defendant was further ordered to devote the time and energy to the operation of the business consistent with his past practice.
The defendant testified that he is no longer operating the business. He testified that the business has accounts payable of approximately $60,000.00 and accounts receivable of $8,000.00 to $10,000.00. He believes that the company is presently insolvent. He blames the decline of the business to a multitude of factors as follows. Millstone suffered a severe cash flow problem that hindered its ability to purchase supplies in bulk thus raising its cost of production. Millstone also was now facing increased competition from other companies with similar products CT Page 15277 and services. Additionally, the defendant blames the plaintiff for creating employee morale problems due to her strong religious beliefs being injected into the business. The court does not find the defendant's testimony in regard to his wife's alleged detrimental effect on the business to be credible.
Credible testimony was presented that the plaintiff's role in the management and control of the business was minimal. When the defendant was incarcerated in prison, the plaintiff, took a more active role in Millstone out of necessity rather than by choice. During said period, the plaintiff admitted that she did not have the skills to operate the business and sought assistance from her son-in-law. The plaintiff further testified that she was suffering from depression during said period and that she turned to her religious faith to help her in making appropriate business and personal decisions.
The court finds through credible evidence that the recent failure of Millstone can be attributed directly to the actions of the defendant. The defendant depleted Millstone of funds by taking a $20,000.00 bonus and doubling his salary when the business was experiencing financial difficulties. The court also concludes that the defendant declined to address the financial difficulties of the business due to his marital difficulties as evidenced by a letter from the defendant to the plaintiff dated February 26, 1999 which states in paragraph #10 as follows: "I have no intention of securing a line of credit for this business as long as you are involved. So let the chips fall where they may!" (Defendant's Exhibit A.)
The defendant was found guilty after trial in Federal District Court in January of 1997 to the crime of conspiracy to commit fraud. The defendant did not appeal his conviction and was incarcerated from April through December of 1997. His absence during the period of his incarceration also had a detrimental effect on Millstone. The attorney's fees in defense of the criminal action cost the defendant approximately $40,000.00.
The plaintiff attributes the breakdown of the marriage to her husband's extramarital affair, his disrespect and his deceit. She felt betrayed and emotionally distraught by her husband's expression of his love and devotion for her while at the same time he was romantically involved with another woman. (Plaintiff's exhibits #1, #2 and #3.)
The defendant testified that he believed that the plaintiff's religious excesses contributed to the breakdown of the marriage. He also believed that his wife mistreated him verbally and did not provide him the emotional support he needed during his criminal legal difficulties. CT Page 15278
The plaintiff is currently employed as a house cleaner grossing $200.00 to $375.00 a week.
The plaintiff incurred approximately $25,000.00 in attorney's fees in connection with this dissolution of marriage during the past two years of which $15,000.00 remains unpaid. The parties have stipulated as to the reasonableness of the fees with no agreement as to whether the defendant should be ordered to pay any of said fees.
The marital residence at 9 Deborah Drive, Ellington, is currently encumbered by a first mortgage to People's Bank and a second mortgage to the Savings Bank of Rockville.
The defendant husband is 56 years old and is currently working in the evening as a printing press operator earning $259.00 a week. There was no evidence presented as to any health problems the defendant was suffering. He testified that he did not prefer to take another job during the daytime as the present court case requires his appearance during the daytime. The court finds that his earning of $259.00 in his current employment is not an accurate reflection of his earning capacity. The defendant testified that the $75,000.00 salary he would have received from the R2 Corporation was below the market value for his services and unacceptable to him. The defendant further expressed dissatisfaction with the proposed covenant not to compete in the Letter of Intent with the R2 Corporation because it would preclude him from pursuing an occupation and utilize his experience in the bar-code technology-field should his employment with the R2 Corporation be terminated. The defendant testified that he had ten years of bar-code experience as a result of his employment with Telcomp Bar-Code from 1975 to 1985 in addition to the fourteen years of experience in operating Millstone.
Accordingly, the court concludes that the defendant taking a job as a printing press operator earning $259.00 a week literally abandoned all of his skill and experience in the bar-code technology field that enabled the parties to have withdrawn officer's pay of $2,749.00 a week for the three fiscal years ending February 2000.
It is well settled law in Connecticut that a court may base financial awards on earning capacity rather than actual earned income of the parties. In Bleuer v. Bleuer, 59 Conn. App. 167 (2000) the Appellate Court stated:
 "While there is no fixed standard for the determination of an individual's earning capacity; it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it CT Page 15279 confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. When determining earning capacity, it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations." (Citations omitted: internal quotation marks omitted).
The court finds that the plaintiff has an earning capacity of $75,000.00.
The defendant also admitted in his testimony to having an extra-marital relationship with another woman beginning prior to April of 1997 and continuing until after his release from prison in December of 1997. He denies that he is presently still involved romantically with said woman although he admits that he still is residing by himself in a condominium she owns. He also admitted to hiring this woman to work at Millstone but terminated her employment after his wife learned of the affair.
The defendant incurred approximately $20,000.00 in attorney's fees for this dissolution of marriage.
The evidence supports and the court so finds that the greater share of the responsibility for the breakdown of the marriage lies with the defendant. The defendant was involved in an extramarital affair which the court finds to have been a significant factor in the demise of the marriage. Additionally, the defendant's criminal difficulties as well as his neglect of the family business also contributed to the breakdown of the marriage.
After taking into consideration all of the criteria set forth in General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-84 and applying the same to the evidence, the court enters the following orders:
1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
2. The plaintiff and defendant shall have joint legal custody of the minor children with the primary residence with the plaintiff subject to reasonable rights of visitation with the defendant.
3. The defendant shall pay the plaintiff the sum of $250.00 per week as child support for the minor children. The court finds that the application of the support guidelines would be inequitable under the circumstances and approves the deviation from the child support CT Page 15280 guidelines due to the division of assets and liabilities of the parties, the provision of alimony to the plaintiff and the defendant's earning capacity.
4. The defendant shall provide medical insurance commensurate with his existing coverage for the benefit of the minor children. The plaintiff shall be entitled to medical insurance under COBRA at her own expense for the maximum period allowed by law.
5. The plaintiff and defendant shall share equally in the unreimbursed medical, dental, optical, pharmaceutical, orthodontic, psychological and optical expenses for the benefit of the minor children. The court finds that application of the support guidelines would be inequitable or inappropriate under the circumstances and approves this deviation from the child support guidelines due to the division of assets and liabilities of the parties the provision of alimony to the plaintiff and the defendant's earning capacity.
6. The defendant shall be entitled to claim the minor child Julie Chartier as an exemption on his state and federal tax returns and the plaintiff shall be entitled to claim the minor child Georgina Chartier as an exemption on her state and federal tax returns. When the defendant is no longer entitled to claim the minor child Julie Chartier as an exemption on his state and federal tax returns, the parties shall alternate claiming the minor child Georgina Chartier as an exemption beginning with the defendant claiming the child in the first year.
7. The plaintiff's 1998 Mercury automobile in her possession shall remain her property free and clear of any claims by the defendant and the plaintiff shall assume and hold said defendant harmless from the outstanding loan on said automobile.
8. The defendant's Bass Boat in his possession shall remain his property free and clear of any claim by the plaintiff.
9. The plaintiff's remaining personal property in her possession shall remain her personal property free of any claims by the defendant. The defendant's personal property in his possession shall remain his personal property free of any claims by the plaintiff.
10. The defendant shall maintain life insurance in the minimum amount of $100,000.00 naming the plaintiff as irrevocable beneficiary thereon for as long as he has a child support or alimony obligation.
11. The defendant shall convey to the plaintiff by quitclaim deed any and CT Page 15281 all interest he may have in the property located at 9 Deborah Drive, Ellington, Connecticut within thirty days of this order. The plaintiff shall assume, pay and hold the defendant harmless from the first and second mortgages on said property.
12. The defendant shall be solely responsible for the restitution, if any, due the United States of America and shall hold the plaintiff harmless therefrom.
13. The court finds that this has been a marriage of thirty-three years. The plaintiff, who is now 57 years old does not have a marketable skill and would need additional education or training to enhance her earning capacity. Accordingly, the court orders the defendant shall pay to the plaintiff the sum of $200.00 per week as periodic alimony for a period of eight years. Said alimony shall terminate upon the death of the plaintiff, the remarriage of the plaintiff, or the death of the defendant. This alimony obligation is intended as a separate maintenance and said obligation shall not be affected by any discharge in bankruptcy.
14. The plaintiff shall convey to the defendant her common stock in the business known as Millstone Sales and Service, Corp. Said transfer shall be a nontaxable transfer and the defendant shall assume all officer's loans attributable to the plaintiff or defendant and shall be solely liable for any tax consequences incurred either at the time of transfer or in the future as result of said officer's loans. The defendant shall hold the plaintiff harmless for any debts and liability arising out of the operation of said business. The plaintiff shall forthwith resign as an officer and/or director of said corporation.
15. Each party shall be responsible for his and her own attorney's fees and costs.
16. Except as specifically otherwise ordered, each party shall be responsible for the debts as set out in their respective financial affidavits and hold the other party harmless therefrom.
17. A contingent wage execution shall issue.
18. Plaintiff's counsel shall prepare and file within thirty days of this decision a judgment file and both counsel shall sign the judgment file.
Edward C. Graziani Superior Court Judge CT Page 15282